JOSEPH PARADISE *vs.* CHARLES A. RICK, *Exec.*

JULY 18, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of the case, based on a claim for services, against the estate of Bella Malone, late of the town of Lincoln, deceased. The trial of the case in the superior court resulted in a verdict for the plaintiff and the

defendant thereupon filed in that court a motion for a new trial on the usual grounds. This motion was denied by the trial justice. The defendant duly excepted to this denial and has brought to this court his bill of exceptions, containing this exception and others which he took during the trial.

The defendant is the duly appointed and qualified executor of the last will and testament of the aforesaid Bella Malone; and his wife, Anna S. Rick, is one of the principal beneficiaries under the will. The plaintiff was a neighbor of Bella Malone's in the village of Saylesville in the town of Lincoln in this state. He lived there since 1917, when he moved from his former home in Fall River, Massachusetts. He claims to have worked on and around Bella Malone's real estate in Saylesville, painting, papering, carpentering, and otherwise tending to the general repair and maintenance of such real estate until the funeral of her husband, James Malone, in May 1937. He also testified that he did no work thereafter, because he was not allowed admittance to the Malone home as he formerly had been; that he never received any compensation for his work, although he claims that Bella Malone promised him, on several occasions, that he would be paid for all that he had done; and that he need not worry about it.

The defendant's theory seems to be that the plaintiff's claim is improbable and unbelievable in view of the evidence of Bella Malone's prompt payment of all her debts when they became due, and of the plaintiff's long delay in demanding payment for his services and his failure in not keeping any record, either of the many items of work and labor which he claims to have performed or of the charge which he made therefor. The defendant's theory also involves a further contention to the effect that, if the services were actually rendered and if they were not paid for, there is no evidence in the record which furnishes a reasonable

basis on which the damages awarded by the jury can be supported.

These and other contentions, which we shall notice as we proceed, are brought to this court by the defendant's bill of exceptions containing twenty-two exceptions. However, the defendant has argued and briefed here only three of those exceptions as follows: To the admission in evidence of the probate court record of the estate of Bella Malone; to the exclusion of the claim filed by the plaintiff against the estate of James Malone; and to the denial of defendant's motion for a new trial. In accordance with our well-established rule, the other exceptions being neither briefed nor argued are waived.

Did the trial justice err in admitting in evidence the probate court record of the estate of Bella Malone? The admission of such a record in a case of this kind should be allowed with caution. There are cogent reasons in support of defendant's contention that the jury should not be permitted to take into the jury room such a record containing irrelevant and immaterial items which might tend to prejudice their minds and perhaps lead them astray from the true issue or issues of fact submitted for their determination. The instant case, however, presents certain issues concerning which the probate court record cannot be said to be wholly irrelevant and immaterial.

The trial justice was compelled to rule on this question at the very threshold of the trial. He did not decide it out of hand from the bench but took time over a recess period to consider it, and also to hear arguments of counsel, after which he came to the conclusion that he ought to admit the record in evidence. At the time of its admission, however, he then and there specifically instructed the jury concerning the purpose for which the record was being admitted and charged them clearly that they were to consider it only

for that purpose. And later, at the conclusion of the evidence, when he came to charge them on the whole case, he again specifically and forcibly instructed them as to the extent to which they could consider the probate court record in coming to their verdict.

Under all the circumstances of the instant case we are of the opinion that the trial justice did not commit prejudicial error in allowing the admission in evidence of the probate court record, surrounding its admission as he did with timely and repeated instructions to the jury in regard to the purpose thereof. In the consideration of this point we have found some assistance in the plaintiff's citations of authority, although they do not deal with precisely the situation presented by the admission of the probate court record in the instant case. *Marx* v. *Marx,* 127 Md. 373, 96 A. 544; *Palmer* v. *Lodge,* 7 Boyce 537, 109 A. 125; *Leonard* v. *Gillette,* 79 Conn. 664, 66 A. 502; *Stetson* v. *Caverly,* 133 Me. 217, 175 A. 473.

We have not found any case in this state which has definitely passed on the point and it is quite likely that there is none. However, in *Ash* v. *Isaacson,* 59 R. I. 407, 195 A. 700, we did have occasion recently to inquire somewhat into the question. From the consideration which we gave the matter then and from the consideration which we have given to it in the instant case, we are of the opinion that no inflexible rule of admission can be safely laid down. Each situation must be dealt with as it arises on its own peculiar circumstances.

The next question is: Did the trial justice err in his refusal to admit in evidence defendant's exhibit 3 for identification? This exhibit is the statement of claim made by the plaintiff against the estate of James Malone. It was for twelve years' services and amounted to $7152.

The defendant contends that it should have been admitted, as the claim appears to cover identically the same period

included in his claim against Bella Malone, and also, as it is apparent from the plaintiff's evidence, that much of his case is dependent upon what Mr. and Mrs. Malone had each said to Paradise in the presence of the other regarding his services. The defendant contends, moreover, that it was relevant and material, in view of the explanation given by Paradise in his testimony concerning a certain mortgage transaction between him and the Malones whereby the latter cancelled a mortgage for $6000 which Paradise owed them and which was a second lien on certain real estate that he had purchased from the Malones in March 1929.

We have carefully examined the exhibit and have compared it with the evidence and we find that said exhibit was neither relevant nor material to the defendant's case. The trial justice did not commit error, therefore, in excluding it.

The final question is whether the trial justice committed reversible error in denying defendant's motion for a new trial. After a hearing, he delivered his decision from the bench and went at some length into the reasons which prompted him to deny the defendant's motion. In the statement of his decision he also made some observations on the character of the services claimed to have been performed by the plaintiff and also upon the rule which governed the jury in their consideration of the evidence. We have been impelled by these factors to discuss this point at some length.

The decision of a trial justice granting or denying a motion for a new trial will not be disturbed unless it is clearly wrong. *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292. Defendant recognizes this rule and appreciates the burden which it imposes upon him in seeking to have this court reverse the trial justice's decision. But he argues that, where such decision is based upon an error of law or a misconception of the evidence or when it appears that the verdict is opposed to established physical facts, the verdict does not acquire any

additional support from the approval of the trial justice. To support this argument he cites *Williams* v. *United Electric Rys. Co.,* 53 R. I. 472. That case and the later cases, *Hamilton* v. *Rosen,* 58 R. I. 35, *Barlik* v. *United Electric Rys. Co.,* 60 R. I. 227, state the rule substantially as it is stated by the defendant.

The question then for us to answer here is whether or not the trial justice misconceived the evidence or applied an incorrect rule of law thereto, and also whether or not the jury's verdict is based wholly upon evidence which, though not contradicted or denied by other evidence, is inherently self-contradictory or opposed to established physical facts. This latter phase of the question is, to a greater or less extent, involved in the question of whether or not the trial justice misconceived the evidence and the effect thereof.

To answer this question requires a careful examination of the evidence. In reading the transcript we have kept in mind, as presumably the trial justice did, that this is not the ordinary action at law where the parties to the controversy are both alive and able to testify and are otherwise able to assist in the preparation for trial. In this class of cases the true defendant is dead. His interests or rather those of his estate are confided to his personal representative, who may know nothing whatever about the claims which are filed against the estate of the deceased and may not be able to find anything among the deceased's effects to assist in making an adequate defense to such claims. And the older such claims, the less likelihood there is of the administrator or executor finding any assistance anywhere. Indeed if a deceased was in the habit of paying for services as they were rendered and for purchases as they were made, and did not therefore have occasion to keep any system of personal accounts, then the finding of any rebutting evidence among such deceased's effects is all the less likely.

All of these elements, as well as others, have contributed to make this court and other courts look with extreme caution, if not at times with suspicion, upon cases based upon alleged services rendered to a deceased over a long period of years and allegedly wholly unpaid at the death of the deceased. In such cases the contest is often an unequal one and, unless the evidence is closely scrutinized by the jury, there is grave danger that the estates of deceased persons will be unjustly mulcted in damages. *Armour* v. *Doonan*, 55 R. I. 243; *Gorton* v. *Johnson*, 23 R. I. 138; *McAtee* v. *Jackson*, (R. I.), 157 A. 305.

Accordingly in *Armour* v. *Doonan, supra,* we said: "In determining whether or not a fact or state of facts existed at a given time or during any period, the reasonableness of the testimony and its consistency with itself and other proven circumstances, especially if they are established by conduct over many years, are considerations of the highest importance and should not be overlooked or disregarded in testing the credibility of a claim. . . . Long delay in presenting or prosecuting a claim is evidence against its validity, especially when the claim is not asserted in the lifetime of the alleged debtor and is further rebutted by inconsistent conduct on the part of the claimant over a term of years. Actions of this character, when one party to the transaction has deceased, call for the closest scrutiny. . . . Either party or witness may be contradicted by extrinsic facts as completely as by direct testimony. A claim is not to be held as proven merely because there is no direct testimony contradicting it, if such a claim contains inherent improbabilities or contradictions, which alone, or in connection with other established facts, tend to prove its invalidity."

The elements of the evidence therein discussed are of the greatest significance in considering whether or not a verdict for the plaintiff is justified on such a claim as the one sued on in the instant case, and the trial justice should

give heed thereto in deciding whether or not he will approve the jury's verdict on defendant's motion for a new trial. If it appears from his decision that he has not fully regarded these elements and has based his decision on a personal reluctance to differ with the jury or to substitute his judgment on the evidence for their judgment when the circumstances require it, then his approval of their verdict will lack the persuasive force that such an approval, when properly rendered, is declared to have in *Wilcox* v. *Rhode Island Co., supra.*

In the instant case the plaintiff has testified to a great many details of his services to the deceased over a long period of years. The greater part of those services were of an inconsequential character. He kept no account of the time when he performed the services or of the amount of time it took him to perform them. All of his testimony is an estimate and this estimate comes after a considerable lapse of time through a period of six years. There is no testimony that the plaintiff ever charged the deceased for these services in the sense of rendering her a bill therefor, either at the time they were performed or even at any time later. There is no testimony that he ever told her at any time what the approximate cost of them would be or that he ever in later years gave her any idea of the amount in money which had accumulated as a debt against her by reason of his unpaid services.

His first explanation on the witness stand of all this was that the deceased had on two or more occasions told him not to worry, that he would be taken care of. But he also testified later that once, a few months before the deceased's death, he was going to ask her for some money on account but that the deceased was not feeling well and he was afraid, if he spoke to her about it, she would "get mad" and he would not get anything.

It appears from the evidence that the plaintiff was on relief in the town of Lincoln during part of the time that he alleged he was working for the defendant and at which time, according to his claim, the defendant was indebted to him for a large sum of money. There is no testimony that he asked Mrs. Malone to pay this alleged debt when he found himself in such circumstances. Another significant fact in evidence was his payment of rent to the deceased while, according to his claim, she owed him several thousands of dollars for work and labor which he had performed for her.

The deceased, according to all the evidence, was not a person to let bills remain unpaid. This is clear beyond dispute. She paid all her bills for purchases promptly and also everyone who worked for her. The trial justice commented on this fact in his decision, but he added "there is no evidence that she ever was anxious to pay any more than the value of what she got." We are at a loss to understand the pertinency of this latter comment. Why should she pay more? The defendant insists that the evidence shows that the deceased always paid and paid promptly for what she got. Only the plaintiff, according to his testimony, was never paid for what he did for the defendant. His complaint is not that she never paid him extra but that she never paid him at all.

The trial justice states in his decision that the case was full of inconsistencies and in this he is certainly correct. If such inconsistencies amounted, in his judgment, to self-contradiction of the plaintiff, his apparent failure to give effect to those inconsistencies, on the ground that he ought not to substitute his interpretation of them for that of the jury, is incorrect. He does not say whether, in his opinion, they did or not; but it seems to us that this was probably due to the fact that he did not exercise his independent judgment in the matter but was content to accept the jury's

view of the evidence. In these circumstances we are obliged to examine the evidence for ourselves.

On our view of the evidence, we cannot agree with the decision of the trial justice. The evidence bristles with inconsistencies that clearly amount in some vital instances to self-contradictions. Without going into further detail or pointing out specific instances, we are convinced that the great weight of the evidence preponderates against the verdict of the jury and that the trial justice was clearly wrong in approving it in the manner and for the reasons given by him in his decision.

The defendant's exception to the denial of his motion for a new trial is sustained, and the case is remitted to the superior court for a new trial.

*Woolley, Blais & Quinn, Walter J. Hennessey,* for plaintiff.

*Thomas P. Corcoran, Charles E. Mangan,* for defendant.